**UNITED STATES of America ex rel.
David TYRRELL, Appellant,**

v.

**Fred SPEAKER, former Atty. General
of Pa., et al.**

No. 71-1906.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Sept. 11, 1972.

Decided Jan. 3, 1973.

As Amended Jan. 9, 1973.

---

* Rule 18, 5th Cir.; see Iebell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

David Tyrrell, pro se.

Dante Mattioni, Michael Luber, Harrisburg, Pa., for appellees.

Before BIGGS, JAMES ROSEN,* and HUNTER, Circuit Judges.

OPINION OF THE COURT

BIGGS, Circuit Judge.

In this suit brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1970), plaintiff Tyrrell seeks injunctive relief and damages from the very nu-

---

* Judge James Rosen participated in the argument in this case but died before a decision was reached.

merous defendants named in the title. He asserts that the appellees are guilty of conspiracy, wilfully and maliciously depriving him of his civil rights violating the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.

Tyrrell was arrested on December 20, 1969 in Delaware County, Pennsylvania, and was charged with a series of crimes, including robbery and the shooting of a police officer prior to his arrest. Tyrrell was injured and was admitted to the Riddle Memorial Hospital near Media, Pennsylvania. Upon release therefrom he was admitted to the Delaware County Prison Hospital until December 26, 1969. It is assumed, though the complaint does not so state, that he left the hospital at the time last indicated and was remitted to a cell in the prison itself. According to the complaint, on January 22, 1970 the relator was seen emerging from the cell assigned to Raymond Crispt. A hole had been dug in Crispt's cell. An affidavit filed by a guard, William E. Rambo, stated the following: "While on duty, as a Prison Guard at Delaware County Prison, Thornton, Pa., on 22, January 1970 at about 9:00 P.M., a report was received by prison personnel that a prison break was about to be attempted in cell-block 'A'. Lt. Joines, the Prison Officer in charge, Guard Samuel LaSpina and myself were dispatched to cell-block 'A' and began a systematic check of the cells within this block. It was during this cell-check that inmate David Tyrell [sic] was seen emerging from a cell assigned to inmate Ray Crisp[1] which is located on the upper tier of the block. Inmate Tyrell's assigned cell was on the lower tier of this block. *Inmate Tyrell was covered with what appeared to be dried mortar and particles of stone and dust.* On checking this cell #33, Guards found a hole dug in the cell-wall.

All the above was reported to the Warden of the Prison." (Emphasis added)

Another affidavit, that of Samuel LaSpina, states as follows:

"While on duty 22 January 1970 at about 9:00 P.M., Lieutenant Joines, the Prison Officer in charge called me and Prison Guard Rambo to go with him to cell-block 'A', because of reports of hearing unusual noises which sounded like banging and hammering on a wall.

"Lt. Joines, Guard Rambo and myself entered cell-block 'A'. We split up and I went to the upper tier on the right side of the block. As I was nearing cell 33 inmate Tyrell was coming out of this cell *brushing off dust and debris from his clothing.* He was the only person in this cell. I asked inmate Tyrell what he was doing in cell 33 that belonged to inmate Ray Crisp. (Inmate Tyrell's cell was on the first floor or lower tier.) Inmate Tyrell said he came to the upper tier to get a cigarette, as he was leaving cell 33 I looked around inside this cell and found a hole being dug in the wall. (Emphasis added.)

"I immediately called Lt. Joines and Guard Rambo to observe and examine same.

"All the above was reported to the Warden of the Prison."

After this apparent connection of Tyrrell with Crispt in an attempted prison break, Tyrrell was charged with attempted prison breach,[2] classified as a security risk, and subsequently transferred from Delaware County Prison to the State Correctional Institution at Graterford, where he was placed in a punitive segregation unit.

Robert L. Johnson, Superintendent of the Graterford State Correctional Institution, filed an affidavit as follows: "David Tyrell, 40089, while confined at the Graterford State Correctional Insti-

---

1. Sometimes Crisp's name is spelled as in this affidavit and sometimes as Crispt in the opinion. The difference is immaterial for the purposes of this opinion.

2. With respect to attempted prison breaks, see 18 P.S. § 5107 (1963) and 18 P.S. § 4309 (Supp.1972–73) and Commonwealth v. Wojdakowski, 62 Pa.Dist. & Co.R. 684 (1948).

tution was placed in the maximum security cell block because he had charges of escape while in the Delaware County Prison and subsequently committed violations against the institutional rules and regulations.

"Note: David Tyrell was received in the Graterford Institution as an untried case from Delaware County."

While it is not entirely clear from the record, we assume, in the absence of any proof or suggestion to the contrary and in view of Superintendent Johnson's affidavit, that it was he who caused Tyrrell to be placed in punitive segregation at the Graterford State Correctional Institution. It does not appear that Superintendent Johnson, or Warden Gable or Warden Zigler of the Delaware County Prison had the benefit of the testimony taken at any hearing respecting Tyrrell's offenses or that the Superintendent of Graterford or either of the wardens was present at any of the hearings. See note 8, *infra*. These are matters which should be inquired into upon remand.

Tyrrell has filed a countervailing affidavit in which he states in substance that he was not taking part in a prison break, that he had gone into Crispt's cell to get a cigarette, and that he was not guilty of any violation of institutional rules and regulations. He asserts that there was no basis for the decision to classify him as a security risk and transfer him to Graterford and that such decision was arbitrary, capricious, and motivated by a prejudice against him arising out of his having been charged with shooting a police officer, thereby depriving him of due process under the Fourteenth Amendment. Tyrrell also claims that he was subjected to cruel and unusual punishment violating the Eighth Amendment and deprived

of his First, Fifth, and Fourteenth Amendment rights due to the following circumstances: he was held in punitive segregation for nine months;[3] kept in a cell with inadequate heating and allowed out only for meals, showers and short exercise periods; compelled to wear prison coveralls; had his hair cut short; was not allowed to attend prison religious services; was denied medical treatment in respect to his deficient eyesight in that his prescription for corrective glasses was lost and he has not received such glasses; was not allowed to work, which prevented him from buying materials needed for his legal papers at the prison canteen; was not permitted to have his legal papers typed; was not allowed to have his mail registered, thereby denying him proof of mailings; and could not have his legal documents notarized in his presence, denying him knowledge that they were in fact notarized.

The Attorney General of Pennsylvania moved to dismiss on the ground that Tyrrell had failed to state a cause of action upon which relief could be granted. The trial court granted the motion and dismissed the complaint. The appeal at bar followed.

■ Tyrrell's complaint is conclusory in many of its allegations. But "a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" 2A Moore's Federal Practice, ¶ 12.08 at 2271–74 (1968). (Emphasis in original). In the recent case of Gray v. Creamer, 465 F.2d 179 (3 Cir. 1972), this court noted that a motion to dismiss a prisoner's civil rights complaint for failure to state a claim upon which relief can be granted is subject to a very

3. It appears that Tyrrell was only held in punitive segregation for eight months: the period between his transfer to Graterford on February 10, 1970, until he was released into the general prison population following his trial and conviction for the series of crimes for which he was arrested on December 20, 1969, referred to in the first paragraph of this opinion, which occurred on October 9, 1970.

The record as to times is not clear for we do not have the record of the trial on the offenses for which Tyrrell was originally arrested before us.

strict standard. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), was cited, in which the Supreme Court reversed a district court grant of such a motion, which grant had been affirmed by the Court of Appeals on the ground that prison officials are vested with wide discretion in disciplinary matters. The Court said: "Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U. S. 41, 45–46 [,78 S.Ct. 99, 2 L.Ed.2d 80] (1957)." Haines v. Kerner, *supra* at 520–521, 92 S.Ct. at 595.

In the case at bar we cannot find that all of Tyrrell's allegations fail to meet the standard enunciated in Haines v. Kerner, *supra*. It is true that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). The well-established rule is that discipline reasonably maintained in state prisons is not under the supervisory direction of Federal courts. Ford v. Board of Managers of the New Jersey State Prison, 407 F. 2d 937 (3 Cir. 1969); Gurczynski v. Yeager, 339 F.2d 884 (3 Cir. 1964); United States ex rel. Keen v. Mazurkiewicz, 306 F.Supp. 483 (E.D.Pa.1969). Nor is a prisoner entitled to his choice of prison accommodations. Fidtler v. Hendrick, C.A. No. 64–1415 (E.D.Pa. Nov. 6, 1969); Lipscomb v. Stevens, 349 F.2d 997 (6 Cir. 1965), cert. denied, 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479 (1966); Holland v. Ciccone, 386 F.2d

825 (8 Cir. 1967), cert. denied, 390 U.S. 1045, 88 S.Ct. 1646, 20 L.Ed.2d 307 (1968). "Some deprivations are a necessary and expected result of being an inmate of a penal institution, which institution must provide for the custody, maintenance, discipline and optimistically, rehabilitation of those who have violated the laws of the sovereign." Jackson v. Godwin, 400 F.2d 529, 532 (5 Cir. 1968).

In Gittlemacker v. Prasse, 428 F.2d 1, 3–4 (3 Cir. 1970), Judge Aldisert stated: "[S]o long as incarceration as a form of punishment continues, we are required perforce to recognize that, archaic and indefensible though it may be, its objective is to circumscribe certain activities and opportunities not only available in, but also characteristic of, an open societal setting. And, unpleasant as it is to contemplate the physical restrictions of a 'settled environment', we must also recognize that even those rights which survive penal confinement may be diluted by peculiar institutional requirements of discipline, safety, and security.

"To determine, with precision, those rights which follow an inmate into prison involves a process of weighing and balancing conflicting interests. The desire that there be a maximum opportunity for the exercise of rights and privileges may often collide with the practical necessities of managing and administering a complicated penal community. The task of striking the proper balance between these conflicting interests is generally within the competence of the prison authorities. Thus, the federal courts have been understandably reluctant to intervene in matters of state prison administration, recognizing that a wide latitude for judgment and discretion must be extended to prison officials."

Tyrrell has alleged that he was not only deprived of First Amendment rights but was subjected to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments, by the length of his stay in puni-

tive segregation and the conditions therein. What constitutes punitive segregation as a discipline of Graterford State Correctional Institution does not appear from the record and we are not able to take judicial notice of its conditions. We have said that solitary confinement[4] does not, in itself, violate the Eighth Amendment, and "the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for juducial relief." Ford v. Board of Managers of New Jersey State Prison, 407 F.2d 937, 940 (3 Cir. 1969). The alleged conditions which existed here, such as the inadequate heating in the cell and the fact that Tyrrell was only allowed out for meals, showers, and short exercise periods, do not present the extreme type of conditions required to establish an Eighth Amendment violation. See Wright v. McMann, 387 F.2d 519 (2 Cir. 1967) (confinement in dirty cell encrusted with human excretion without clothing or rudimentary hygienic implements under threat of beatings held cruel and unusual punishment); Knuckles v. Prasse, 302 F.Supp. 1036 (E.D.Pa.1969) (confinement of two prisoners for 2½ days to cell with no window or artificial light, a single bed, no clothing or toilet articles, and a malfunctioning toilet held cruel and unusual punishment). But in light of the length of Tyrrell's stay in punitive segregation under the alleged conditions (eight months), and since this case is to be remanded to the district court for reasons hereinafter discussed, we see no sound reason to prevent Tyrrell from presenting evidence on this issue if he so desires. See Gray v. Creamer, 465 F.2d 179 (3 Cir. 1972). This is not to say, however, that we hold that eight months stay in punitive segregation is in and of itself violative of the Eighth Amendment.

■■ As we have said, Tyrrell was classified as a security risk, transferred to Graterford[5] and placed in punitive segregation as a result of his alleged attempted prison break at the Delaware County Prison, which Tyrrell claims was done without due process of law.[6] Since matters outside the pleading, *viz.*, affidavits, were accepted by the trial court, defendants' motion to dismiss for failure to state a claim upon which relief can be granted was converted into a motion for summary judgment.[7]

The error of the district court in the instant case like that in United States ex rel. Jones v. Rundle, 453 F.2d 147, 150 (3 Cir. 1971), as was stated by Judge Adams, "resides in its granting defendant's motion for summary judgment. Summary judgment is proper only when 'there is no genuine issue as to any material fact and . . . the

4. We are unable to determine from the record whether punitive segregation at Graterford is akin to or is solitary confinement.

5. A transfer of an untried prisoner from a County prison to a State prison for security reasons is permissible under Pennsylvania law. See 61 P.S. § 72 (Supp. 1972–73).

6. Tyrrell was indicted for attempted prison breach and conspiracy to commit prison breach. He was found not guilty on February 9, 1971, one year after he was placed in punitive segregation and four months after his release therefrom. The record of this trial was not before the District Court and since we do not have it before us, we cannot tell what the evidence was. As will appear hereinafter, this case will be remanded to the end that this record can be brought before the District Court.

In making the foregoing reference we do not mean to imply that a Commonwealth prison official is bound by a judgment of acquittal for the Commonwealth is required to prove guilt beyond a reasonable doubt and the Commonwealth prison official in imposing punitive segregation surely is entitled to exercise some discretion as to the necessity for the sanction.

7. F.R.Civ.P. 12(b) states: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, . . . "

moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. Rule 56(c). 'Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. . . . Documents filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist and *not* to decide the fact issues themselves.' Krieger v. Ownership Corp., 270 F.2d 265, 270 (3d Cir. 1959); *accord*, Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246 (3d Cir. 1966); Janek v. Celebrezze, 336 F.2d 828 (3d Cir. 1964). The burden of demonstrating the justification for a motion for summary judgment lies with the movant. Adickes v. S. H. Kress & Co., 398 U.S. 144, 153–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969)."

The ruling in Gray v. Creamer is relative to this case.[8] Judge Van Dusen stated: "[W]e . . . hold that the transfer of a prisoner from the general prison population to solitary confinement without either notice of the charges or a hearing does not, absent unusual circumstances not evident in the pleadings, meet minimal due process requirements. See Sostre v. McGinnis, 442 F.2d 178, 198 (2d Cir. 1971): 'If substantial deprivations are to be visited upon a prisoner, it is wise that such action should at least be premised on facts rationally determined. This is not a concept without meaning. In most cases it would probably be difficult to find an inquiry minimally fair and rational unless the prisoner were confronted with the accusation, informed of the evidence against him, . . . and afforded a reasonable opportunity to explain his ac-

tions.' (Citations and footnote omitted)."[9]

Gray requires that Tyrrell's transfer to punitive segregation by the Superintendent of Graterford or a warden of the Delaware County Prison be based, after hearing, on "facts rationally determined." Tyrrell's transfer was made after the hearing before a committing magistrate but before his trial. See note 6, *supra*. But there is nothing in the record to show what the evidence was at the magistrate's hearing, that any prison official was present at that hearing,[10] or that the prison official who made the decision to transfer Tyrrell had any knowledge of what transpired at the hearing. We cannot determine, nor could have the court below, the basis for the decision to impose punitive segregation, and in particular, whether it was based on "facts rationally determined" after a proper hearing. Defendants were thus not entitled to judgment as a matter of law. F.R.Civ.P. 56(c). This necessitates a vacating of the judgment below and a remand to the District Court for an adequate record and for further consideration.

Tyrrell's allegations that he was denied access to the courts, was not permitted to have his legal papers notarized in his presence or typed, was not allowed to have his mail registered, was not allowed to work due to his punitive segregation and thus earn funds for his legal materials, was denied attendance at religious services, and was not furnished with prescription glasses, go primarily to the issue of the legality of his punitive segregation under the circumstances

---

8. In *Gray* there was no hearing. In the case at bar there were two hearings but the evidence of neither of these hearings apparently was before the prison official who committed Tyrrell to punitive segregation. In fact, as was stated in note 6, *supra*, Tyrrell had already been committed to punitive segregation prior to the second hearing, i. e., his trial on the attempted escape charges.

9. Judge VanDusen's decision was handed down on August 14, 1972 and therefore

Judge Huyett, whose decision was dated July 27, 1971, did not have the benefit of *Gray*.

10. Strenuous efforts to obtain copies of the proceedings before the magistrate and at Tyrrell's attempted escape trial have proved unavailing. The Commonwealth apparently is unable to furnish these documents assuming them to be in existence.

at bar and should also be considered by the court below on remand.

 Though former Attorney General Speaker and present Attorney General Creamer are named in the complaint, there are no allegations as to them which would make them part of the alleged conspiracy. This is also true as to Prasse and Sielaff, and the complaint must be dismissed as to these four defendants. As to the remaining defendants we will remand with the direction to proceed to trial to determine whether or not Tyrrell's rights under the First, Eighth and Fourteenth Amendments have been violated. If they have, Tyrrell may be able to recover damages. His request for injunctive relief cannot be granted for there is no showing that he is presently suffering the deprivation of any rights which he has asserted under the Civil Rights Acts.

Judgment will be entered in accordance with this opinion.