532 F.2d 939
 Allen Bodine SCOTT, Appellant,
v.
Dr. Ingre Rudolph PLANTE, M. D.
Allen B. SCOTT
v.
Ann KLEIN, Individually and in her official capacities as
Commissioner of institutions and agencies.
Allen B. SCOTT
v.
Dr. Martin WEINBERG.
Allen B. SCOTT
v.
Gov. Brendan T. BYRNE.
Allen B. SCOTT, Appellant,
v.
Hon. Richard J. HUGHES.
 Nos. 75-1552, 75-2356.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Dec. 10, 1975.
Decided March 29, 1976.
 
 Edward F. Duschock, Perth Amboy, N. J. (Alfred J. Petit-Clair, Jr., Perth Amboy, N. J., of counsel and on the brief), for appellant in No. 75-1552; Allen B. Scott, pro se in No. 75-2356.
 William F. Hyland, Atty. Gen. of N. J., Trenton, N. J., for defendants; Richard M. Conley, Deputy Atty. Gen., Trenton, N. J., of counsel; Mark A. Geannette, Deputy Atty. Gen., Trenton, N. J., on the brief.
 Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 These consolidated appeals bring before us five separate pro se complaints filed by Allen B. Scott, a long time resident of Trenton State Hospital, a psychiatric hospital to which New Jersey has customarily committed persons charged with a crime but unable to stand trial or acquitted by reason of insanity.
 
 
 2
 In District Court Civil Action No. 1052-73, consisting of complaints filed on July 17, 1973 and July 27, 1973, the defendant is Dr. Ingre Rudolph Plante, a physician employed as Chief Executive Officer of the Trenton State Hospital (hereinafter Hospital). These complaints allege that Scott has been confined to the Hospital since 1955, that all charges against him were dismissed on the ground of insanity in 1968, and that since 1968 he has been confined in violation of his constitutional rights. The July 27th complaint asserts that Scott has been forced to take drugs and other treatment against his will and without consent of any family member. The complaints seek declaratory relief and damages.
 
 
 3
 In District Court Civil Action No. 74-989, filed July 1, 1974, the defendant is Ann Klein, the New Jersey Commissioner of Institutions and Agencies, which department includes the Hospital. The complaint alleges that the defendant has "made no effort to rehabilitate me, discharge me or transfer me to a civil hospital, sense (sic) my charges were dismissed over 5 years ago." The complaint seeks damages and injunctive relief.
 
 
 4
 In District Court Civil Action No. 74-1715, filed November 4, 1974, the defendant is Dr. Martin Weinberg, Medical Director of the Hospital and New Jersey Mental Health Commissioner. The complaint states:
 
 
 5
 I developed a lung condition or tuberculosis from the lack of fresh air or proper ventilation in the Vroom Bldg. Dayrooms. The dayrooms are full of smoke and stale air. There is inadequate heating and ventilation in all of the Vroom Bldg.
 
 
 6
 I should of (sic) been transferred to the civil hospital tuberculosis bldg.
 
 
 7
 The Vroom Building is the maximum security wing of the Hospital. The complaint seeks damages and a transfer to a civil tuberculosis hospital. It also repeats the allegation in Civil Action No. 1052-73 of unlawful confinement.
 
 
 8
 In District Court Civil Action No. 74-1958 filed December 6, 1974, the defendant is Governor Brendan T. Byrne. It repeats the allegation in Civil Action No. 1052-73 that all criminal charges against Scott have been dismissed, and claims that the refusal to transfer him to a civil hospital violates his constitutional rights. The complaint seeks declaratory relief and damages.
 
 
 9
 In District Court Civil Action No. 74-2032, filed December 30, 1974, the defendant is Chief Justice Richard J. Hughes. On behalf of Scott and all similarly situated inmates of the Vroom Building, the complaint alleges that the practice of holding hearings on sanity in the Vroom Building does not give the inmates a meaningful hearing. Scott contends that the presiding judge does not permit inmates to testify on their own behalf and that the hearings are not open to the public but instead are held in the staff room which provides no room for inmates to have family or relatives present. Scott also repeats the allegation of Civil Action No. 1052-73 that since criminal charges have been dropped he should be transferred to a civil hospital. The complaint seeks declaratory and injunctive relief as well as damages on behalf of the class.
 
 
 10
 In all five actions Scott sought the appointment of counsel, but in each case the court ruled that appointment was not warranted.
 
 
 11
 In Civil Action No. 1052-73 the Attorney General of New Jersey, in November, 1973, moved to dismiss under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. This motion was denied on January 8, 1974.[1] On August 1, 1974 the Attorney General made a motion for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P., supported by the affidavits of Herbert G. Saexinger, M.D., the assistant Medical Director of the Hospital, and of Frances McRoberts, the keeper of the Hospital's medical records, to which he attached Scott's pertinent patient records. These affidavits were submitted to the court only, and were not served on Scott, because the Attorney General stated that it was the policy of prison hospitals, when dealing with prisoners who suffer from psychiatric maladies, not to reveal the contents of their medical records. On September 19, 1974 this motion for summary judgment was denied. The court in a letter to Scott and the deputy Attorney General handling the case pointed out that not having seen the affidavits Scott was in no position to comply with Rule 56(e), Fed.R.Civ.P., and that in any event the affidavits simply did not address the issue of the legality of Scott's confinement.[2]
 
 
 12
 Thereafter, following the recommendation of Judge Biunno, the Attorney General forwarded to the court certified copies of all process, pleadings, transcripts and orders filed in the State Court proceedings. These are contained in the record as exhibits R-1 through R-37. On January 27, 1975 the Attorney General, relying on these newly submitted documents, again moved for summary judgment. On February 4, 1975 the court in a "Letter Opinion and Order" which is quoted in full in the margin[3] granted the motion.[4] The appeal in Court of Appeals No. 75-1552 followed.
 
 
 13
 Eventually, District Court Civil Actions Nos. 74-989, 74-1715, 74-1958 and 74-2032 were, on the motion of the Attorney General and over Scott's objection, ordered to be consolidated for trial. By the time the cases were consolidated, however, answers had been filed in each action by the Attorney General. No Rule 12(b)(6) or Rule 56 motion, however, was filed. On April 30, 1975 the district court sua sponte filed a "Letter Opinion and Order" dismissing the actions without prejudice. Judge Biunno's opinion[5] is quoted in full in the margin.[6] The appeal in Court of Appeals No. 75-2356 followed.
 
 
 14
 From the pleadings and affidavits we glean that Scott was indicted in Burlington County, New Jersey, for the murder of his grandmother on July 18, 1954. In February, 1955, a hearing was held pursuant to N.J.S.A. 2A:163-2 in which a jury determined that Scott was mentally incompetent to stand trial on the indictment, and an order was entered that he be removed from imprisonment in the Burlington County Jail and confined to the Trenton State Hospital "until such time as he may be restored to reason, but not to be released from such confinement except upon the order of this court." (Exhibit R-2). He has been confined to the Vroom Building ever since, except for brief periods when he was returned to Burlington County to stand trial on the indictment. The trial, however, never took place. On October 7, 1968 the indictment was dismissed on the ground that Scott was insane when the offense was committed, and he was returned to the state hospital "until further order of this court." (Record at 4, Scott v. Plante, Civ. Action No. 1052-73). See N.J.S.A. 2A:163-3.
 
 
 15
 Periodically between 1955 and 1973 Scott presented habeas corpus petitions to the Superior Court, Law Division, Mercer County, seeking release from confinement. Although on at least two occasions the state habeas corpus court found him competent to stand trial (Exhibits R-6, R-9) and returned him to the Burlington County Jail, at no time, even after the indictment was dismissed, did the court order his release. In some instances the state habeas corpus court, after a hearing, found that Scott was incompetent and if released would be dangerous to himself or to others or to the property of others. See N.J.S.A. 2A:163-3. Such a finding was made on December 15, 1971. (Exhibit R-32). In some cases the court found only that Scott was in need of further hospitalization and treatment. The two most recent hearings reflected in the record, on May 21, 1973 and on September 27, 1973, resulted in the latter type findings. (Exhibits R-35, R-1). No appeal appears to have been taken from any of these denials of habeas corpus relief.
 
 
 16
 The affidavit of Dr. Saexinger discloses that in June of 1974, when it was executed, Scott was receiving medication. It does not disclose, however, whether the administration of medication is voluntary or involuntary. Dr. Saexinger sets forth a diagnosis of Schizophrenia, Paranoid Type; an extremely guarded prognosis; and the need for further hospitalization. (Saexinger Affidavit at 4). The affidavit does not state that if released Scott would be a danger to himself or to others.[7] See State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975); State v. Carter, 64 N.J. 382, 316 A.2d 449 (1974); State v. Maik, 60 N.J. 203, 287 A.2d 715 (1972).
 
 
 17
 Thus, the district court had before it a complainant who, though once charged with murder, is no longer subject to an indictment, but nevertheless is confined. That complainant challenges (1) the allegedly involuntary administration of medication; (2) his continued confinement without receiving proper treatment for his mental condition; (3) the physical conditions in the Vroom Building, which he alleges caused tuberculosis; (4) his confinement in violation of his constitutional rights; and (5) the procedures afforded by the New Jersey court system to inmates of the Vroom Building for determining their sanity. Since the district court largely ignored the provisions of the Federal Rules of Civil Procedure in disposing of these claims, we have with some difficulty traced their disposition through an entirely unsatisfactory record. The "letter opinion" quoted in note 5 is, as best we can tell, a Rule 12(b) (6), Fed.R.Civ.P., disposition of each claim to which it refers. Thus we review these claims by the standard of Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), and Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint should not be dismissed for insufficiency unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. See, e. g., Thomas v. Brierley, 481 F.2d 660 (3d Cir. 1973) (per curiam); United States ex rel. Tyrrell v. Speaker, 471 F.2d 1197 (3d Cir. 1973); Gray v. Creamer, 465 F.2d 179 (3d Cir. 1972). The "letter opinion" quoted in note 3 refers to summary judgment. Since that "letter opinion" disposes of the involuntary medication claim, we review it by the standard set forth in Rule 56(c), Fed.R.Civ.P. Summary judgment may only be granted if, taking the non-movant's allegations as true and drawing all inferences in his favor, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law. See, e. g., United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1963) (per curiam); Tomalewski v. State Farm Life Insurance Co., 494 F.2d 882 (3d Cir. 1974).
 
 I. The involuntary medication claim
 
 18
 Scott never saw, and hence could never respond to, the affidavits filed in support of the Attorney General's motion for summary judgment on the involuntary medication claim. Our examination of Dr. Saexinger's affidavit discloses that Scott has received Thorazine, Compazine, Mellaril, Vesprin and Trilafon.[8] (Saexinger affidavit at 2, 4). But neither Dr. Saexinger's nor Frances McRoberts' affidavit responds to Scott's allegation that he has been given drugs without his consent or that of a guardian. Thus, for present purposes we must take Scott's assertion as true, and we can affirm the award of summary judgment only if we conclude, as the district court did, than an allegation of the involuntary administration of psychotherapeutic substances does not state a cause of action under 42 U.S.C. § 1983 and the fourteenth amendment.
 
 
 19
 The district court made reference to N.J.S.A. 30:4-7.2, which requires notice to and a request for consent from a parent or guardian before treatment can be given to an incompetent inmate of a New Jersey mental institution, and suggested that if the statute was violated there might be a cause of action under the New Jersey Tort Claims Act. See N.J.S.A. 59:1-1 et seq. Certainly, absent an emergency, unconsented to medical treatment is a tort. E. g., Winters v. Miller, 446 F.2d 65, 68 (2d Cir.), cert. denied,404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971); Dunham v. Wright, 423 F.2d 940 (3d Cir. 1970). The district court concluded, however, that it was inconceivable that the involuntary administration of psychotherapeutic substances could also establish a constitutional deprivation. We cannot agree with this conclusion, for existing case law points to at least three[9] conceivable constitutional deprivations that may accompany the involuntary administration of such substances by state officers acting under color of state law to inmates confined in a state institution. There is no need at this point in the proceedings to define with precision the particular source of Scott's constitutional deprivation.[10] It is sufficient to recognize that the involuntary administration of drugs which affect mental processes, if it occurred, could amount, under an appropriate set of facts, to an interference with Scott's rights under the first amendment. See Mackey v. Procunier, 477 F.2d 877 (9th Cir. 1973); Kaimowitz v. Dep't of Mental Health, Civ. No. 73-19434-AW (Mich.Cir.Ct., Wayne County, July 10, 1973).[11] Moreover, on this record we must assume that Scott, though perhaps properly committable, has never been adjudicated an incompetent who is incapable of giving an informed consent to medical treatment. Under these circumstances due process would require, in the absence of an emergency,[12] that some form of notice and opportunity to be heard be given to Scott or to someone standing in loco parentis to him before he could be subjected to such treatment.[13] Finally, under certain conditions, Scott's claim may raise an eighth amendment issue respecting cruel and unusual punishment. See Knecht v. Gillman, 488 F.2d 1136 (8th Cir. 1973); Mackey v. Procunier, supra at 878.
 
 
 20
 While the record in this case is inadequate for assessment of the merits of these possible constitutional deprivations, we conclude that the district court's summary dismissal of Scott's involuntary medication claim was improper.
 
 II. The confinement without treatment claim
 
 21
 The question whether patients committed by the state to mental institutions have a constitutional right to meaningful treatment for their condition has received a vast amount of scholarly and judicial attention since the seminal article by Dr. Morton Birnbaum, The Right to Treatment, 46 A.B.A.J. 499 (1960).[14] In two opinions written for the Fifth Circuit Judge Wisdom has held that there is such a constitutionally protected right. Wyatt v. Aderholt, 503 F.2d 1305 (5th Cir. 1974); Donaldson v. O'Connor,493 F.2d 507 (5th Cir. 1974), vacated and remanded, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). See also, Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966); Welsch v. Likins, 373 F.Supp. 487 (D.Minn.1974); Davis v. Watkins, 384 F.Supp. 1196 (N.D.Ohio 1974); New York State Ass'n For Retarded Children, Inc. v. Rockefeller, 357 F.Supp. 752 (E.D.N.Y.1973), consent judgment approved sub nom. New York State Ass'n For Retarded Children, Inc. v. Carey, 393 F.Supp. 715 (E.D.N.Y.1975). The Supreme Court did not reach the issue in O'Connor v. Donaldson, supra. Nor has this court considered it. It is not the kind of issue, however, which we should attempt to resolve definitively on the record that is before us. In both Wyatt v. Aderholt, supra, and Donaldson v. O'Connor, supra, the matter was before the court after trial. It suffices for present purposes to say that it does not appear to a certainty that Scott would be entitled to no relief on his right to treatment claim under any state of facts he could prove in support of that claim. Thus, a Rule 12(b)(6) dismissal was improper.
 
 
 22
 III. The claim respecting physical conditions in the Vroom Building
 
 
 23
 It is far too late in the game for the serious assertion of the proposition that the federal Constitution is not implicated with respect to the physical conditions to which a state subjects persons it chooses to confine by virtue of a civil or criminal judgment of commitment. See, e. g., Newman v. Alabama, 503 F.2d 1320 (5th Cir. 1974), cert. denied, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975); United States ex rel. Tyrrell v. Speaker,supra at 1202; Sostre v. McGinnis, 442 F.2d 178 (2d Cir.) cert. denied,404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1971); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Knuckles v. Prasse, 302 F.Supp. 1036 (E.D.Pa. 1969). In New York State Ass'n for Retarded Children, Inc. v. Rockefeller,supra, Judge Judd held that mental patients have a federally protected right to be protected from harm. 357 F.Supp. at 764. However, we cannot say on the basis of the present record where the balance must be struck between the federal requirement for minimally humane living conditions in places of confinement and the necessary loss of rights which occurs inevitably as a result of civil or criminal commitment. See, e. g., Wright v. McMann,supra; New York State Ass'n for Retarded Children, Inc. v. Rockefeller,supra at 764. But, as with the claim for treatment, we must conclude that it does not appear to a certainty that Scott will be entitled to no relief with respect to the unhealthy conditions in the Vroom Building of which he complains under any state of facts he may prove in support of that claim. A rule 12(b)(6) dismissal was improper.IV. The claim respecting unconstitutional confinement
 
 
 24
 Scott first asserted that his confinement was unlawful in Civil Action No. 73-1052, filed in July, 1973. At that time persons charged with crimes were confined pursuant to N.J.S.A. 2A:163.2 which, in relevant part, provides that if prior to trial the defendant is found to have been insane when the crime was committed, the indictment will be dismissed and he shall be confined "until such time as he may be restored to reason." An identical provision applied to persons acquitted by reason of insanity. N.J.S.A. 2A:163-3. In State v. Maik, supra, the term "restored to reason" was held to mean that one's condition need be "effectively neutralized". 60 N.J. at 217-219, 287 A.2d at 722-724. Such neutralization was more than the remission which would permit a civilly committed patient to return to society, but less than a complete cure. 60 N.J. at 218, 287 A.2d at 723. As so interpreted the New Jersey statute was inconsistent with the Supreme Court's holding in Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). That case held the Indiana prisoner commitment statute unconstitutional since it subjected mentally ill prisoners to a more lenient commitment standard and a more stringent standard for release than those generally applicable to all other persons. The exhibits on file disclose that Scott was committed under such a less stringent standard and that on a number of occasions in passing upon petitions for habeas corpus the New Jersey Courts applied the "restored to reason" test. Thus, prima facie Scott's confinement, as of the time he filed Civil Action No. 73-1052, would appear to be inconsistent with Jackson v. Indiana, supra.
 
 
 25
 Before the district court got around to acting on the complaint, which for purposes of the charge of illegal confinement it treated as a petition for a writ of habeas corpus, the Supreme Court of New Jersey, on March 6, 1974, decided State v. Carter, supra. In that case the court approved of the practice of conditionally releasing persons who had committed an offense and had been committed to the state hospital, even though their underlying condition was incurable. Justice Clifford, concurring and dissenting, pointed out that the new gloss placed upon the New Jersey statute by the majority opinion did not go far enough in meeting the constitutional requirements laid down in Jackson v. Indiana, supra, and in Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). 64 N.J. at 410, 413-20, 316 A.2d at 464, 466-70.
 
 
 26
 The district court sua sponte seized upon the decision in State v. Carter as a reason for dismissing the writ of habeas corpus for failure to exhaust the new remedy afforded by that case. Since Scott is in custody pursuant to a judgment of a State court, the exhaustion requirement of 28 U.S.C. § 2254(b) is applicable. But so is the qualifying language in that statute which states that exhaustion is not required in face of "circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). State habeas corpus is always available to test Scott's confinement. But if in the state proceeding the New Jersey courts would apply legal standards inconsistent with Jackson v. Indiana, supra, and Baxstrom v. Herold, supra, as the record discloses they have in a number of Scott's prior applications, then such state process would be ineffective to protect his federal constitutional rights. As Justice Clifford's dissent in State v. Carter points out, there are serious variations between and omissions from the procedures required by the United States Supreme Court and those approved by the majority of the New Jersey Supreme Court in State v. Carter. The decision of the district court does not address the adequacy of the State v. Carter procedures.
 
 
 27
 The deficiencies noted by Justice Clifford, as they bear on this appeal, were significantly remedied, however, by the subsequent New Jersey Supreme Court decision in State v. Krol, supra, holding that criminal defendants may be committed, and must be released, by the same standards as are applicable in civil commitment and release proceedings: the likelihood of danger to oneself or to society. This decision certainly goes far toward meeting any constitutional defects in the available New Jersey remedies, but Justice Pashman's majority opinion did not convince Justice Clifford that New Jersey has gone far enough. In his dissent 68 N.J. at 267, 344 A.2d at 306, he points out that the New Jersey Supreme Court has announced the rule that in any commitment or release proceeding the State may meet the burden of justifying confinement by a preponderance of the evidence that the defendant is mentally ill and is likely to pose a danger to himself or society. Relying on In re Winship, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 374-375 (1970), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), he urges that no one may be deprived of his liberty and stigmatized by confinement unless all elements of the case against him have been proved beyond a reasonable doubt. This was one ground on which he had dissented in State v. Carter, 64 N.J. at 410, 316 A.2d at 449. Judge Tamm reached the same conclusion in In re Ballay, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973). See Lessard v. Schmidt, 349 F.Supp. 1078, 1094-95 (E.D.Wis.1972) (three-judge court), vacated and remanded on other grounds, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1974); In re Andrews, 334 N.E.2d 15 (Mass.1975) (collecting authorities); Denton v. Commonwealth, 383 S.W.2d 681 (Ky.App.1964); Compare In re Alexander, 125 U.S.App.D.C. 352, 372 F.2d 925 (1967). See also Stachulak v. Coughlin, 520 F.2d 931, 17 Cr.L.Rep. 2642 (7th Cir. 1975), cert. denied, --- U.S. ----, 96 S.Ct. 1419, 47 L.Ed.2d 354, 44 U.S.L.W. 3489 (1976); Tippett v. Maryland, 436 F.2d 1153 (4th Cir. 1971), cert. dismissed sub nom. Murel v. Baltimore City Crim. Ct., 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972). Certainly the holding in In re Ballay and Justice Clifford's dissent in State v. Krol suggest that the question of the adequacy of the available state remedy in New Jersey is a serious one.
 
 
 28
 Because the district court sua sponte dismissed on the authority of State v. Carter, supra, neither Scott nor the Attorney General had the opportunity to brief the competing considerations which might lead to approval or disapproval of the holding in In re Ballay, supra. We afforded the opportunity for such briefing in this court, but received nothing helpful from Scott or from the Attorney General on that issue. It is obviously significant. Moreover, we do not know whether the Attorney General, or Scott, would want it decided as an abstract proposition of law, or would want to make a record, perhaps including behavioral science data of which we are unaware, in support of one evidentiary standard or the other in the mental health commitment context. Certainly we are not comfortable with the idea of deciding the issue on this record.
 
 
 29
 Since there is a serious question whether the corrective process available in the New Jersey Courts is effective by federal standards, a Rule 12(b) dismissal of the habeas corpus application was improper.
 
 
 30
 V. The procedural complaints about hearings at the Vroom Building
 
 
 31
 The allegations in Civil Action No. 74-2032 that in the hearings conducted at the Vroom Building the judge does not permit inmates to testify on their own behalf, that the hearings are not open to the public, and that the staff room is so small that an inmate cannot have friends and relatives present, all go to the adequacy of New Jersey's release proceedings. If they are true, then the state would not appear to afford the kind of release proceeding required by Jackson v. Indiana, supra, and Baxstrom v. Herold,supra. The state, of course, denies the allegations. But since this is a Rule 12(b)(6) dismissal we must take them as true. Whether the complaint in Civil Action No. 74-2032 is considered as a petition for habeas corpus or as an action under 42 U.S.C. § 1983 for declaratory and injunctive relief, a Rule 12(b)(6) dismissal was improper.
 
 VI. Counsel
 
 32
 The foregoing outline of the legal and factual issues presented by Scott'sseveral complaints, when compared with the district court's treatment of them, demonstrates that more serious consideration should have been given to Scott's repeated requests for the appointment of counsel pursuant to 28 U.S.C. § 1915(d). Certainly in New Jersey, where the bar has a long tradition of voluntary service, and where three fine law schools engage in extensive public service, there was no need for the court to go it alone.
 
 VII. Conclusion
 
 33
 Each of the orders appealed from will be reversed and the cases remanded to the district court for further proceedings consistent with this opinion and the Federal Rules of Civil Procedure.
 
 
 
 [1]
 Scott v. Plante, Civil No. 1052-73 (D.N.J. January 8, 1974) (letter opinion)
 
 
 [2]
 Scott v. Plante, Civil No. 1052-73 (D.N.J. September 19, 1974) (letter opinion)
 
 
 [3]
 
 LETTER OPINION AND ORDER
 Plaintiff's complaint has been treated by the court as both a civil rights complaint 42 U.S.C. § 1983 and a petition for habeas corpus relief 28 U.S.C. § 2254. The State has moved for summary judgment on the civil rights complaint and, pursuant to the direction of the court, has submitted materials addressed to the habeas petition.
 
 
 *
 The petition for habeas corpus relief cannot be construed as an attack upon the original commitment, but rather as an attack upon the continuing commitment. The exhibits submitted by the State adequately support this. Since in his original commitment, Scott has brought many petitions under the State's habeas machinery, all of which assert his rehabilitation. On the hearing of those applications, counsel was appointed for Mr. Scott and after receiving evidence found that his incompetence to stand trial continued
 None of those proceedings indicate however, that Mr. Scott has ever attacked the basis for his original commitment. Further, it appears that no appeal was taken from those Law Division determinations that Mr. Scott's incompetency continued. This presents an exhaustion problem.
 Although there are certain circumstances in which this court can act upon the merits of a petition without exhaustion of available state remedies for instance when such an act would be fruitless, the circumstances of this case command the opposite result.
 The Supreme Court of New Jersey State v. Carter, 64 N.J. 382 (, 313 A.2d 216) (1974) specifically addressed the rights of those individuals who, having allegedly committed a criminal act, are found to be incompetent to answer for that act and are thereafter civilly committed. The court established guidelines for review and stated the findings the court would require. In light of this important decision, this court deems it advisable that this petition for habeas corpus relief be dismissed on the ground of failure to exhaust state remedies. That will give the courts of New Jersey an opportunity to apply the principles of Carter to the Scott situation.
 It is hereby certified that there is no probable cause for appeal.
 II
 The second aspect of this complaint deals with plaintiff's allegations that he was for a period receiving drugs against his will and that he has been incarcerated against his will.
 As to the first allegations N.J.S.A. 30:4-7.1 et seq. deals with the treatment of incompetents. Even assuming that plaintiff was given drugs without his guardian's consent as required in N.J.S.A. 30:4-7.2, the court does not conceive this as a matter cognizable under 42 U.S.C. § 1983. If the statute was, in fact, violated, plaintiff might derive a statutory right to sue under the New Jersey Tort Claims Act. This court cannot, however, conceive of that act rising to a constitutional deprivation. The cruel and unusual punishment clause is applicable in certain situations, but the mere allegation that certain medicines were administered does not allege acts "so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition." Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970).
 As to the allegation that plaintiff has been detained against his will, this court has reviewed the record and can detect no due process deprivations in those proceedings which ruled that his commitment was to continue. To that end, the complaint is totally devoid of specificity as to what acts give rise to the alleged deprivation or if defendant, Plante was responsible. Nevertheless, the plaintiff's commitment continued pursuant to findings of incompetency by various Law Division courts. Accordingly, the lack of detectable due process violation calls for judgment for defendant.
 It is ORDERED that Scott's petition for habeas corpus relief is denied and
 It is further ORDERED that summary judgment is granted to defendant on the entire complaint. No costs.
 s/ VINCENT P. BIUNNO, U. S. D. J.
 February 3, 1975
 Scott v. Plante, Civil No. 1052-73 (D.N.J. February 4, 1975) (letter opinion).
 
 
 [4]
 We note, as we have in the past, that there is no judgment set forth on a separate document as required by Rule 58, Fed.R.Civ.P. E.g., Bethlehem Mines Corp. v. U. M. W., 476 F.2d 860, 863-64 (3d Cir. 1973)
 
 
 [5]
 
 FNLETTER OPINION AND ORDER
 Allen Scott has filed 19 civil suits in this court since later 1970, of which 9 are open. In each case, Scott has named a single, individual defendant including, among others, Governor Byrne, Chief Justice Hughes, Attorney-General Hyland, Commissioner Ann Klein, Administrative Director Simpson, U. S. District Judges Barlow and Fisher and various physicians and other staff personnel or consultants at Trenton State Hospital.
 Scott is in Trenton State Hospital by commitment pursuant to N.J.S.A. 2A:163-2, as a person charged with crime but who is insane. Under State v. Carter, 64 N.J. 382 (, 313 A.2d 216) (1974), periodic judicial review of the question whether there should be conditional release in accordance with N.J.S.A. 30:4-107. Such hearings have been held by Superior Court Judge Schock, in accordance with that ruling.
 Carter, which was decided March 6, 1974, represents a change in the interpretation of State law, and all of Scott's pending cases fail to take account of that change.
 For these reasons, the pending cases captioned above are clearly frivolous and are accordingly dismissed pursuant to 28 U.S.C. § 1915(d).
 The dismissal is without prejudice to the filing of a proper complaint in the future, but if this is done any such complaint will be required to include all claims that Scott may have, and to join all necessary parties in a single action. Scott's practice of filing separate complaints against separate defendants for what are obviously related matters will not be permitted, and if continued such separate complaints will also be dismissed. No costs.
 SO ORDERED.
 s/ VINCENT P. BIUNNO, U.S.D.J.
 April 30, 1975
 Scott v. Klein, Civil No. 74-989; Scott v. Cooke, Civil No. 74-1614; Scott v. Weinberg, Civil No. 74-1715; Scott v. Byrne, Civil No. 74-1958; Scott v. Hughes, Civil No. 74-2032 (D.N.J. April 30, 1975) (letter opinion).
 
 
 [6]
 Again we note that the District Court did not comply with Rule 58, Fed.R.Civ.P
 
 
 [7]
 On December 9, 1975 the Attorney General advised this court that on November 24, 1975 the Burlington County Court held a hearing in which Scott, represented by the Office of the Public Defender, was determined to be likely to pose a danger to himself or to society if he were released from confinement
 
 
 [8]
 It is beyond the scope of this opinion to discuss all the medical effects of these drugs. See generally Goodman & Gillman, Pharmacological Basis of Therapeutics (4th ed. 1970). Thorazine, and to a lesser extent Compazine, have been described as producing a dazed condition, engendering apathy and slowing the thought process. See Ferleger, Loosing the Chains: In-Hospital Civil Liberties of Mental Patients, 13 Santa Clara Law. 447, 470 n. 72 (1973), citing Goodman and Gillman, supra. Potential side effects of thorazine are said to include interference with ejaculation, menstrual changes, drowsiness, rashes, euphoria, enlargement of the breasts, convulsions and Parkinsonism. See Note, Conditioning and Other Technologies Used to "Treat?" "Rehabilitate?" "Demolish?" Prisoners and Mental Patients, 45 S.Cal.L.Rev. 616 (1972)
 
 
 [9]
 A possible fourth constitutional deprivation might include invasion of the inmate's right to bodily privacy which has been adumbrated in various Supreme Court decisions. See, e. g., Roe v. Wade, 410 U.S. 113, 152-53, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (brief history of the development of the right); Developments in the Law-Civil Commitment of the Mentally Ill, 87 Harv.L.Rev. 1190, 1195-96 n. 12 (1974) (hereinafter Developments in the Law-Civil Commitment); Note, On Privacy: Constitutional Protection for Personal Liberty, 48 N.Y.U.L.Rev. 670 (1973). The scope of such a right, however, remains ill-defined
 
 
 [10]
 See generally Schwartz, In the Name of Treatment: Autonomy, Civil Commitment and the Right to Refuse Treatment, 50 Notre Dame Law. 808 (1975); Comment, Advances in Mental Health: A Case for the Right to Refuse Treatment, 48 Temp.L.Q. 354 (1975)
 
 
 [11]
 Kaimowitz v. Dep't of Mental Health is summarized in 42 U.S.L.W. 2063 (July 31, 1973), and is reproduced in full in A. Brooks, Law, Psychiatry and the Mental Health System 902 (1974)
 
 
 [12]
 Cf. Application of President & Directors of Georgetown College, Inc., 118 U.S.App.D.C. 80, 331 F.2d 1000, reh. denied, 331 F.2d 1000, cert. denied, Jones v. President & Directors of Georgetown College, 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964)
 
 
 [13]
 See Winters v. Miller, supra at 71. N.J.S.A. 30:4-7.2, referred to in the district court opinion, authorizes the chief executive officer of a state penal correctional facility or a state mental hospital to give consent for the administration of medical, psychiatric, surgical or dental treatment to incompetent patients or inmates after a reasonable opportunity has been provided for the parent or guardian to give written consent. N.J.S.A. 30:4-7:3, however, authorizes the chief executive officer to consent to treatment for all inmates upon certification of a grave emergency by a licensed physician or dentist
 
 
 [14]
 See Developments in the Law-Civil Commitment, supra at 1316-57, and cases and commentaries noted therein