40 N.J. Super. 291 (1956)
123 A.2d 43
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MARCEL BARRY STERN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1956.
Decided May 17, 1956.
*292 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Charles V. Webb, Jr., Essex County Prosecutor, argued the cause for the appellant.
Mr. Samuel I. Kessler argued the cause for the respondent (Messrs. Kessler & Kessler, attorneys; Mr. William A. Ancier, on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
On this motion the prosecutor seeks leave to appeal from an interlocutory order of the trial court *293 granting a hearing to the defendant under N.J.S. 2A:163-2 for the purpose of determining in advance of trial whether he was legally insane at the time of commission of certain alleged crimes.
It appears that in January 1955 defendant Stern was arrested and charged with a number of crimes. His arraignment in the magistrate's court occurred on January 24.
A few days later, while he was confined in the Essex County Jail, his wife applied to the assignment judge of the county to have him declared insane and committed. The application was supported by certificates of two physicians, as required by N.J.S.A. 30:4-29.
The matter was presented to Judge Speakman on January 31. At that time the prosecutor advised that a phychiatrist had examined Stern on behalf of the State and that on the basis of the report received he would offer no objection. Thereupon, on February 1, 1955, an order was signed adjudging the prisoner insane as of that date. In addition, it directed his removal from the county jail and commitment to the New Jersey Hospital for the Insane, "there to remain * * * until restored to reason or removed or discharged according to law * * *." The prosecutor's approval was endorsed thereon.
The mandate of the court was complied with and Stern is still confined to the Hospital.
In June 1955 the Essex County grand jury returned five indictments covering the alleged offenses for which defendant was arrested in January.
On November 21, 1955 an application was made on Stern's behalf under N.J.S. 2A:163-2 for a hearing to determine whether or not he was insane at the time of commission of the offenses. In support thereof medical proof in affidavit form was submitted showing that presently he is confined to the criminal part of the hospital and that transfer to the civil branch cannot be accomplished so long as the indictments are pending. According to the neuropsychiatrist who supplied the proof, treatment and cure are impeded in the *294 existing environment and transfer to the civil part would have a beneficial effect on the progress of his case. The purpose of appealing to the trial court for a hearing at this time was not to secure a discharge from the institution but to aid in the treatment of the mental disorder.
After consideration of the medical proofs and the argument of the prosecutor in opposition, the court directed that "an inquiry shall be instituted and proofs taken * * * as to the mental condition of defendant Marcel Barry Stern at the times the offenses charged against him in the above indictments are alleged to have been committed."
In seeking leave to appeal from the order the prosecutor contends that since, at the time of the original commitment proceeding, defendant sought only a finding that he was then insane and not amenable to trial, he forever lost any right or opportunity to seek a pretrial determination under N.J.S. 2A:163-2 of the issue of insanity when the alleged criminal acts were performed. And it is urged also that such failure had the effect of exhausting the authority of the court, and that the only method now available to obtain a decision on the matter is by presenting the defense at a plenary trial of the indictments.
We cannot agree with that view. The statute (N.J.S.A. 30:4-27 et seq.), which prescribes the ordinary procedure for commitment of insane persons regardless of whether criminal charges are involved, is in pari materia with N.J.S. 2A:163-2. State v. Gibson, 15 N.J. 384, 391 (1954). Together the two statutes define the modern means by which in criminal cases the issues of lack of amenability to trial by reason of insanity, and insanity when the crimes were committed, can be determined in advance of trial of the indictments.
There is no express requirement in N.J.S. 2A:163-2 that both issues be disposed of at the same hearing. The legislative language is:
"* * * It shall be competent for the judge if sitting without a jury, or the jury, if one is impanelled, to determine not only the *295 sanity of the accused at the time of the hearing, but as well the sanity of the accused at the time the offense charged against him is alleged to have been committed."
The provision plainly assigns the problem to the discretion of the court. Although the precise inquiry facing us here was not involved, the Supreme Court in State v. Walker, 15 N.J. 485, 494 (1954), seemed to regard a single trial of the dual issues as permissive rather than mandatory. Justice Wachenfeld said:
"The inquiry contemplated by N.J.S. 2A:163-2, N.J.S.A., goes to the mental condition at the time of the hearing, although a determination may also be made as to sanity of the accused at the time of the offense charged." (Emphasis added.)
The matter of commitment when first brought to the attention of a trial court may be beset with practical problems of an emergent nature. For example, as soon as a person charged with crime is lodged in jail, it may appear that he is insane; he may be violent; he may be creating so much disturbance and disorder that the official personnel, as well as the sane inmates, are prejudicially affected. Confronted with this situation, the prosecutor or the police officials may apply for commitment immediately, on short notice to his family or attorney, if he has one, or the family may be asked to institute the proceeding. Printed forms for the purpose are required by N.J.S.A. 30:4-28 to be made available and the use of such forms is provided for in N.J.S. 2A:163-2 through specific reference thereto. In such cases undoubtedly the assignment judge or county judge would order the commitment. Could it be urged fairly thereafter that the insane person was barred from obtaining the statutory hearing as to his sanity when the crime was perpetrated and that his only remedy was to prove the lack of capacity as a defense at a formal trial of the indictment? If it be assumed that the accused never thereafter became sufficiently restored to reason to stand trial, adoption of the position of the State would mean that (subject perhaps to *296 some relief under R.R. 3:11-3) only death would put an end to the charge.
The statute is a remedial one and ought to be administered as such. Whether mental capacity to face trial as well as to be responsible for the crime committed should be heard at the same time, must be left to the discretion of the trial court. Administration of the act cannot be circumscribed by a hard and fast rule. The variant and unpredictable circumstances to which human life is subject make it essential to leave the matter in the sound discretion of just judges.
In a case like the present one, if the defendant was insane when the alleged crimes were committed, he is just as innocent legally as if they were perpetrated by some other person. His commitment to the State Hospital for the Insane in the manner described, should not prevent an effort to pave the way for the establishment of legal innocence through the statutory hearing. Otherwise fading memories or death of witnesses, lay and medical, may render proof of the fact impossible.
For these reasons in our judgment no substantial ground exists for granting leave to appeal. R.R. 2:2-3(b).