**Allen Bodine SCOTT, By and Through his Guardian, Michael J. WEINTRAUB**

v.

**Dr. Ingre Rudolph PLANTE; Commissioner of Institutions and Agencies, Ann Klein; Medical Director of New Jersey State Hospital, New Jersey Mental Health Commissioner, Dr. Martin Weinberg; State of New Jersey, Brendan T. Byrne, Governor; Supreme Court of New Jersey, Richard J. Hughes, Chief Justice.**

Nos. 80–1314, 80–1315 and 80–1596.

United States Court of Appeals, Third Circuit.

Oct. 18, 1982.

Michael J. Weintraub, Steven L. Friedman, Weintraub & Gelade, Trenton, N. J., for Allen Bodine Scott.

Irwin I. Kimmelman, Atty. Gen., Stephen Skillman, Asst. Atty. Gen., Steve Wallach, Deputy Atty. Gen., Trenton, N. J., for Dr. Ingre Rudolph Plante, Ann Klein, Dr. Martin Weinberg.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

## OPINION ON REMAND FROM THE SUPREME COURT, — U.S. —, 102 S.Ct. 3474, 73 L.Ed.2d 1362

GIBBONS, Circuit Judge.

This case is before us on remand from the Supreme Court. It involves a suit by Allen Bodine Scott, an inmate of the Vroom Building at Trenton State Psychiatric Hospital, for declaratory, injunctive, and habeas corpus relief, and for money damages for violation of his rights under federal and state law resulting from the conditions of his confinement. The parties, the procedural history of the case, and the outcome in the district court are set forth fully in our

prior decisions and need not be repeated.[1] We held that the judgment in the district court in defendants' favor on Scott's claims for prospective relief should be vacated, and the case remanded for consideration of specific equitable relief in light of Scott's right to be given adequate treatment and to have his assignment to some other less restrictive setting within Trenton Psychiatric Hospital carefully considered. With respect to the liability of the individual defendants for compensatory and punitive damages, we vacated the judgment and remanded with directions to grant a new trial in light of our opinion. The defendants petitioned for certiorari, and on June 28, 1982 the Supreme Court, —— U.S. ——, 102 S.Ct. 3474, 73 L.Ed.2d 1362, without opinion, granted certiorari, vacated our judgment, and remanded to this court for further consideration in light of *Youngberg v. Romeo,* 457 U.S. ——, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). We asked the parties to comment on the significance of *Youngberg v. Romeo,* and having considered those comments we conclude that the judgment in favor of the defendants on Scott's claims for prospective relief must be vacated, and the case remanded for consideration of specific equitable relief in light of Scott's right, recognized in *Youngberg v. Romeo,* to be given adequate treatment. We conclude, moreover, that *Youngberg v. Romeo* does not eliminate the necessity for further consideration of Scott's claim that he should be assigned to some less restrictive setting within the Trenton Psychiatric Hospital. Finally, we conclude that a new trial on Scott's claim for compensatory and punitive damages is still required.

## I.

Scott asserts a right to adequate treatment, a right to reasonable care, and a right to be free from unreasonably restrictive confinement. We consider separately the effect of *Youngberg v. Romeo* on each of these claims.

### A. *Right to Adequate Treatment*

In our last opinion we approved the trial court's charge to the jury that Scott had a right, secured by the fourteenth amendment, to adequate treatment. In doing so, we relied on this court's en banc decision in *Romeo v. Youngberg,* 644 F.2d 147, 149 (3d Cir. 1980). The Supreme Court's opinion in *Youngberg v. Romeo* does not suggest that our approval of the court's charge was incorrect. The Supreme Court majority noted that a "court properly may start with the generalization that there is a right to minimally adequate training," *i.e.* "training which is reasonable in light of identifiable liberty interests and the circumstances of the case." 102 S.Ct. at 2460 n.25. The opinion of the Court also stressed the significance of professional judgment with respect to a program of treatment. 102 S.Ct. at 2461–62. The evidence in the record is such that a jury could find that defendants failed to treat Scott on a regular basis and that the minimal treatment which was occasionally afforded was a substantial departure from accepted professional standards. Thus it would be clearly inappropriate to direct the entry of a judgment in favor of the defendants at the appellate level on Scott's claim for money damages for failure to provide adequate treatment. There is on this record a jury question as to compliance with the treatment standards approved in *Youngberg v. Romeo.* Moreover, the court in a new trial, will undoubtedly be requested, in formulating a charge to the jury, to take into account the effects of N.J.Stat.Ann. 30:4–24.1 (1981) which provides:

> Every individual who is mentally ill shall be entitled to fundamental civil rights and to medical care and other professional services in accordance with accepted standards . . . .

*See State v. Carter,* 64 N.J. 382, 395, 316 A.2d 449, 455 (1974); *Matter of DJM,* 158 N.J.Super. 497, 500, 386 A.2d 870, 872 (App. Div.1978); *In re D.D.,* 118 N.J.Super. 1, 6, 285 A.2d 283, 286 (App.Div.1971); *State in the Interest of RGW,* 145 N.J.Super. 167,

---

**1.** *Scott v. Plante,* 641 F.2d 117 (3d Cir. 1981); *Scott v. Plante,* 532 F.2d 939 (3d Cir. 1976).

178–81, 366 A.2d 1375, 1381–82 (Passaic Cty. Juv. & Dom. Rel. Ct. 1976). Reliance on the New Jersey statutory right to treatment may be appropriate either because that right is entitled to protection under the fourteenth amendment, *see Youngberg v. Romeo,* 102 S.Ct. at 2458 n.19, or because such a claim should properly be adjudicated in the exercise of the court's pendant jurisdiction over state claims, in order to avoid adjudication of constitutional law issues. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Siler v. Louisville & Nashville R. R. Co.,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

Finally we note that *Youngberg v. Romeo* involved only a claim for money damages for past infringements of the right to treatment which is a component of fourteenth amendment personal liberty. The Court's decision does not inform at all as to the appropriate reach of injunctive relief for the protection of liberty interests established by state law, and the holding is not necessarily dispositive of the scope of prospective relief for the protection of the fourteenth amendment liberty interests which it recognized. Obviously the problem of hindsight interference with decisions made by hard-pressed professional staff members of state mental institutions is a more serious one than that of assisting them in directing prospective injunctive relief against appropriate state officials. *See Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974).

### B. *Right to Reasonable Care*

Scott also contends that the imposition on him of subhuman living conditions violated due process. The trial court concluded that there was sufficient evidence to submit Scott's damage claim to the jury on that theory. The court, consistent with *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), charged that Scott could recover if the conditions in the Vroom Building were punitive in nature and had no reasonable relationship to the state's interests in keeping dangerous mental patients off the streets and in maintaining security. We approved that charge.

*Romeo* expressly acknowledged the continued authority of *Bell v. Wolfish,* 102 S.Ct. at 2460. The Court noted, however, that in balancing the state's interests against a confined persons's liberty interests the balance should not be left to the unbridled discretion of judge or jury. So long as judge or jury determines that the conditions imposed were not punitive in nature or purpose, reasonableness of nonpunitive conditions rests on whether the decision to subject the patient to such conditions was made by a professional competent in the relevant discipline. If so, "liability [for money damages] may be imposed only when the decision by the professional is such a substantial departure from professional judgment as to demonstrate that the person responsible actually did not base the decision on such a judgment." 102 S.Ct. at 2462. In the record before us, there is evidence from which the jury could have found that Scott was confined in subhuman living conditions during most of the 24 years of his confinement and that such confinement resulted from inattention by the defendants to their normal professional responsibilities. Thus we cannot, in light of *Youngberg v. Romeo,* hold that submission of the subhuman conditions claim to the jury was error. The Supreme Court also suggests that no liability for money damages would attach if the departure from accepted professional standards was occasioned by budgetary constraints. *Id.* While there is some evidence in this record that the New Jersey Department of Institutions and Agencies was operating at the time under severe budgetary restraints, there is at least a jury question whether the conditions to which the evidence suggests Scott has been subjected were causally related to such constraints. We do not read *Youngberg v. Romeo* to lay down a rule that budgetary restraints having nothing to do with the specific conditions to which an inmate has been subjected will afford a defense to an action for money damages. A professional judgment with respect to a mental patient obviously must take that patient's individual situation into account.

■ We note, moreover, that several provisions in Title 30 of the New Jersey Revised Statutes suggest a state right to reasonable care. It is the public policy of the state to provide adequate residential facilities for the treatment of mental illness. N.J.Stat.Ann. 30:4–24. Each New Jersey mental patient has a right to privacy and dignity. N.J.Stat.Ann. 30:4–24.2(e)(1). These provisions, and the cases referred to in our discussion of the right to treatment under N.J.Stat.Ann. 30:4–24.1, indicate that the New Jersey courts would recognize a state law right to reasonable care as a necessary predicate to the other more explicit patient rights granted in Title 30. Thus what we have said about consideration on remand of the state statutory right to adequate treatment is equally applicable. We note, as well, the distinction we made earlier between claims for money damages and claims for prospective injunctive relief. That distinction is even more significant when the claim is that, entirely aside from concerns for treatment or security, a state government simply prefers not to spend enough money to provide other than subhuman living conditions for inmates of its institutions.

## C. *Right to Freedom From Unreasonable Restraints*

■ *Youngberg v. Romeo* holds that a state may not restrain residents of institutions for the retarded or the mentally ill except when and to the extent that professional judgment deems this necessary for the reasonable safety of residents and personnel within the institution, or to provide needed training or treatment. 102 S.Ct. at 2462. In our last opinion we concluded that a remand was required for consideration of Scott's claim that he should be assigned to some less restrictive setting in the Trenton Psychiatric Hospital. Under the standard announced in *Youngberg v. Romeo* such a remand is obviously still required.

With respect to the claim for money damages, we approved a charge which said in part:

> Besides the State's objective of keeping a dangerous individual off the streets, you should realize that the government has a legitimate interest that stem [sic] from it's [sic] need to manage the facility in which plaintiff was detained. These governmental interests include the maintenance of security and order at the institution. Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, amount to punishment. However, if the conditions or restraints are excessive in relation to the State's non-punitive purpose, you may find they constituted punishment.

Since the *Youngberg v. Romeo* decision recognizes a substantive fourteenth amendment liberty interest in freedom from unnecessary restraints, the quoted instruction, containing a reference to restraints constituting punishment, was probably more favorable to the defendants than is appropriate. Under *Youngberg v. Romeo* there is no necessity for a factfinder to determine that the restraint constituted punishment. No more need be found than that the restraint was more than a reasonable professional judgment found necessary for safety or treatment. The question of professional judgment as a component of the charge on unreasonable restraint was not presented to the trial court and was not dealt with in our last opinion. Obviously in framing a charge for the new trial the trial court must consider what the Supreme Court said in *Youngberg v. Romeo* in light of the entire record developed at that trial.

## II.

On remand the defendants have urged, as an alternative basis for dismissal of Scott's claims, the Supreme Court's decision in *Harlow v. Fitzgerald,* 457 U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That case, which deals with official immunity in suits for money damages, has no bearing upon our remand for consideration of Scott's claims for injunctive relief. Nor does it bear upon the likely request for attorneys fees which in our last opinion we anticipated. 641 F.2d at 137. Finally, even with respect to Scott's claim for money damages, consideration of *Harlow v. Fitz-*

*gerald* as a reason for modification of our judgment presents a problem respecting the scope of the Supreme Court's mandate. But since we are ordering a new trial, and courts must apply any change in the law occurring prior to final judgment, we have considered the defendants' *Harlow* contention.

The Court in *Harlow v. Fitzgerald* held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known." 102 S.Ct. at 2738. Obviously on remand the trial court will take that holding into account in framing a charge on official immunity. Defendants contend, however, that they are entitled to judgment as a matter of law because the law respecting all of the rights which Scott asserted was unsettled. They made the same contention before the trial court and in the last appeal.

A qualified immunity defense based on unsettled law did not originate with *Harlow v. Fitzgerald. See, e.g., Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978). As we noted on first appeal, the right to be free from inhumane conditions is long established. *See Scott v. Plante,* 532 F.2d 939, 947 (3d Cir. 1976). Assuming, arguendo, that the precise dimensions of the constitutional bases for Scott's recovery—the right to be free of unreasonable restraints and the right to adequate treatment—lacked sufficient definition at the time of defendants' actions to justify the imposition of liability, these rights clearly were granted by statute. At least since the passage of N.J.Stat.Ann. 30:4–24.1 in 1965, and those cases which interpret this provision, the state has an affirmative obligation to treat those mentally ill individuals who are committed to its institutions. Each patient is also entitled to "the least restrictive conditions necessary to achieve the purposes of treatment." N.J.Stat.Ann. 30:4–24.2(e)(2).

In light of this specific statutory recognition, defendants can hardly claim that the rights which Scott seeks to vindicate, as a matter of law, were not clearly established. A reasonable administrator should know the statutory law which apparently affords even greater protection to patients in his institution than that available under the due process clause of the fourteenth amendment in the absence of such statutes. *Compare State v. Carter, State in Interest of R. G. W., In re D. D., with Youngberg v. Romeo.*

### III.

We have, as directed by the Supreme Court mandate, reconsidered Scott's appeal in light of *Youngberg v. Romeo,* and conclude that it requires no essential modification of our prior judgment except for the addition of a direction that the court's further proceedings will be taken in light of *Youngberg v. Romeo* and of this opinion.