**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-3619 & 10-4258
_____

HENRY UNSELD WASHINGTON,
Appellant

v.

JAMES L. GRACE; DAVID J. WAKEFIELD
DORINA VARNER; MELVIN S. LOCKETT;
R.M. LAWLER; HARRY WILSON; LINDA HARRIS;
MARK KRYSEVIG; CAROL SCIRE; S. GLUNT; BARTLEY;
RHODES; DOBRYZINSKI; PEASTRACK; KOVAL; RITCHER
JOHN S. SCHAFFER; WILLIAM S. STICKMAN; MICHAEL A. FARNAN;
ALAN B. FOGEL; FISHER; CAPT. MANCHAS; CAPT. KAUFFMAN;
CAPT. SCOTT NICKELSON; LT. EWING; LT. T. HOLTZ;
LT. R. COOPER; SGT. JOHNSON; MIRABELLA; LILLA; B. BUTLER
B. SMITH; HOSLER; MCCLAIN; C/O L. SMITH, SCI HUNTINGDON;
T.C. GEMBINSKI; GAZARELLA; BOAL; J. BARR; GROVE; SEMPLE; MILLER
HAND; GOODWIN; KERI MOORE; COLE GRAUF
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-07-cv-00867)
District Judge:  Honorable John E. Jones III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2011
Before:  FUENTES, GREENAWAY, JR., and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  September 27, 2011)

_____

OPINION

_____

PER CURIAM

Before us are two appeals that have been consolidated. C.A. No. 10-3619 was taken from two District Court orders: the first, entered June 28, 2010, dismissed plaintiff Washington's complaint and denied as moot his motions for interim relief, see Order, ECF No. 71;[1] the second, entered August 18, 2010, denied Washington's timely motion for reconsideration, see Order, ECF No. 73. C.A. No. 10-4258 was taken from a later District Court order denying Washington's Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(a). See Order, ECF No. 78. We are generally in agreement with the conclusions reached by the District Court, having reviewed its decisions in tandem with the lengthy record; at the same time, its resolution did not fully acknowledge a few of the facially valid claims presented in Washington's complaint. Accordingly, for the following reasons, we will affirm in part, vacate in part, and remand.

I.

Plaintiff Henry Unseld Washington is an African-American male in his mid-to-late 60s. His long history in the Pennsylvania prison system has been

_____

[1] All ECF references in this opinion are to the docket entries in M.D. Pa. Civ. No. 4:07-cv-00867.

2

characterized by repeated transfers, long stints in restricted housing and/or solitary confinement, and, he claims, sustained abuse. According to Washington, he was incarcerated in SCI Dallas from 1980 until October of 1994, where he was repeatedly assaulted by staff members, leading to him commencing a "non-stop continuous letter-writing campaign" to authorities and celebrities—mostly African-American politicians and media figures—that continues to this day. Following a transfer to SCI Greene, a "major assault" by prison staff left him with significant medical disabilities. This pattern of mistreatment, he avers, continued through transfers to SCI Mahanoy and SCI Retreat, where guards and prison staff—familiar with his "rabble rousing" tendencies, and angry about the grievances he filed regarding their friends in other institutions—continued to abuse him.

Washington commenced his lawsuit pro se in May of 2007. In a lengthy and handwritten 43-page document, see ECF No. 1, he identified no fewer than 88 separate defendants, most of whom were staff members and supervisors associated with SCI Fayette (where he was housed from June 20, 2004 until January 17, 2006) and SCI Huntington (where he was transferred thereafter, although he has since been transferred to SCI Pine Grove and appears to be currently housed at SCI Greene). He also raised claims against independent medical contractor Prison Health Systems and its employees. The District Court, observing that Washington's complaint "appear[ed] to contain no factual allegations," dismissed it for failure to comply with the Federal Rules of Civil Procedure, but allowed him to file an amended complaint within twenty days. Order,

3

ECF No. 7.  In a fashion, Washington complied, filing an amended, handwritten complaint that totaled 79 pages and contained 203 separate paragraphs.  See generally Mot. To Amend [Am. Compl.], ECF No. 12.[2]

The amended complaint defies easy summary, but its basic theme is as follows:  because of Washington's tireless filing of grievances and his letter-writing campaign to "black politicians" and other figures, the defendants have entered an ongoing, racially tinged conspiracy of harassment.  At SCI Fayette, Washington would be accosted daily by various defendants, who would "threaten[] to kill [him] or have him [killed] if he ever re-enter[ed] SCI Fayette['s] inmate general population or any-[and]-all prisons located in Northern-Central-Western P[ennsylvania]."  Washington believed that the defendants were acting in concert, connected by a network of familial and professional loyalty; they were "team players" out to destroy him.  He alerted various supervisory officials to these threats on his life, and was promised a transfer to SCI Chester; he was further assured that a transfer to SCI Huntington was "out of the question."  See Am. Compl. ¶¶ 30–34.  Nevertheless, he was transferred to SCI Huntington, where the abuse continued and where he was denied appropriate medical

---

[2] This document forms the basis for much of our discussion, and was the operative complaint analyzed by the District Court.  Paragraph references without explicit alternative citations both above and below the margin are references to Washington's numbering of allegations in his amended complaint.

treatment by the avowedly racist, budget-conscious staff.[3] Following its lengthy recitation of facts, the complaint grouped its "claims" into four long "counts," alleging constitutional violations, contravention of the Religious Land Use of Institutionalized Persons Act [RLUIPA], and violation of a federal criminal statute, along with state-law claims of negligence and medical malpractice.

The District Court initially dismissed the complaint for failing to meet the standards established by Federal Rule of Civil Procedure 8. See Washington v. Grace, No. 4:07-CV-0867, 2008 U.S. Dist. LEXIS 2931, at *5 (M.D. Pa. Jan. 15, 2008). We disagreed, and remanded for further proceedings. Washington v. Grace, 353 F. App'x 678, 680–81 (3d Cir. 2009). Several of the defendants then filed a motion to dismiss, and while Washington submitted several documents thereafter, including a lengthy "Statement of Facts," he did not tender a formal response. After conducting a thorough review of the complaint, the District Court dismissed it on the merits. See generally Washington v. Grace, No. 4:07-CV-0867, 2010 U.S. Dist. LEXIS 63810 (M.D. Pa. June 28, 2010).[4] Washington's timely motion for reconsideration of the ruling was denied. At

---

[3] See, e.g., Am. Compl. ¶¶ 101 ("[T]hese people don't like spending money on inmates."), 157 (alleging a diatribe by one Dr. Klemick, Washington's primary medical antagonist at SCI Huntingdon, who denies access to specialists because Washington, as an incarcerated black male, does not directly pay for medical expenses).

[4] On appeal, the defendants urge us to affirm on the alternative ground that Washington failed to oppose the motion to dismiss, which they claim warrants dismissal under the six-factor test of Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984). We decline to take this approach. In Poulis, we stressed that a dismissal was a "drastic sanction" that was severely disfavored, to be considered only as a last resort. Id.

the same time he filed his first notice of appeal, Washington submitted a "Motion for Relief from Judgment," in which he argued that a response brief he filed was either never received or never docketed, thus precluding a "fair review" of his claims by the District Court; this was construed as a motion under Federal Rule of Civil Procedure 60(a) and was denied shortly after its filing.

## II.

"We have jurisdiction under 28 U.S.C. § 1291 over these appeals from the district court's order granting defendants' motions to dismiss. Our review is plenary." Searles v. Southeastern Pa. Transp. Auth., 990 F.2d 789, 790 (3d Cir. 1993). As Washington proceeds pro se, his complaint is to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). "We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in [Washington's] favor." McGovern v. City of Phila., 554 F.3d 114, 115 (3d Cir. 2009). But "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[;] . . . [t]hreadbare recitals of the elements of a

---

at 867, 869. The defendants argue that they "could have" been prejudiced by Washington's delay, and that Washington has a history of "dilatoriness" from the large number of extensions he has been granted; as to the latter factor, we do not equate *obtaining* continuances with the failure to meet deadlines discussed in Poulis. Furthermore, the defendants point to no authority suggesting that we may invoke Poulis in the first instance, and we could find no cases indicating that we have ever done so. And, lastly, the defendants admit that their motion to dismiss did not address all of Washington's claims. We fail to see how Washington's failure to timely respond to an incomplete motion to dismiss would justify the sanction of dismissing the *entirety* of his complaint via Poulis.

cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations omitted). Our review of the denial of a motion for reconsideration and the denial of Rule 60(a) relief is for abuse of discretion. Kelly v. Matlack, Inc., 903 F.2d 978, 981 (3d Cir. 1990); Washington Hosp. v. White, 889 F.2d 1294, 1300 (3d Cir. 1989).

III.

Both the defendants' motion to dismiss and the District Court's opinion tracked generally the "claims" into which Washington summarized his allegations, and we are mostly in accord with the outcome reached by the District Court. The complaint's defects are many, its clarity undermined by Washington's kitchen-sink approach. Several paragraphs discuss events occurring before the two-year statute of limitations cutoff applied to § 1983 claims in Pennsylvania.[5] E.g., Am. Compl. ¶¶ 5, 7. Other sections assert claims against supervisory defendants, but do not show the required level of personal involvement[6] in the underlying constitutional violations. E.g., Am. Compl. ¶ 177. Many of Washington's medical allegations either sound in malpractice or present mere disagreements with the care received, neither of which suffices to meet constitutional muster. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). To the extent that Washington attempted to sue under 18 U.S.C. §

---

[5] Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009).

[6] Rode v. Dellarciprete, 845 F. 2d 1195, 1207 (3d Cir. 1988).

242, see Am. Compl. ¶ 187, that statute does not create a private right of action. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994); United States v. City of Phila., 644 F.2d 187, 191–93 (3d Cir. 1980). And it is undeniable that Washington failed to file a certificate of merit, dooming his state malpractice claims. See Pa. R. Civ. P. 1042.3 (requiring a certificate of merit in all professional malpractice cases).

While we generally agree with what the District Court did decide, its decision did not cover the entirety of Washington's complaint, when the complaint is read with the requisite level of liberality. Still, many of the claims that are facially outside of the grouping denied by the District Court still do not pass muster. To the extent he raised a Fourth Amendment claim in connection with cell searches, e.g., Am. Compl. ¶ 85, he has no reasonable expectation of privacy in his cell. Hudson v. Palmer, 468 U.S. 517, 526 (1984). Claims based upon tampered-with legal mail and denial of access to the courts, e.g., Am. Compl. ¶¶ 72, 81, 161, fail because Washington does not identify a lost, meritorious legal opportunity. Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis v. Casey, 518 U.S. 343, 352–53 (1996). Washington accuses the defendants of engineering a cover-up of an assault on another inmate, e.g., Am. Compl. ¶ 28, but a litigant may not "rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991). Various minor altercations, such as an alleged spitting incident, see Am. Compl. ¶ 70, do not rise to the level of severity required to violate the Eighth Amendment. See Brooks v. Kyler, 204 F.3d 102, 106 (3d

8

Cir. 2000); Howell v. Cataldi, 464 F.2d 272, 281–82 (3d Cir. 1972). Similarly, the occasional denial of a "full meal," the providing of a buttonless jumpsuit (¶ 58), and the withholding of nail-clippers (¶¶ 55, 82) also do not suffice to state an Eighth Amendment violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) ("[U]nder certain circumstances a *substantial* deprivation of food may well be recognized as being of constitutional dimension." (emphasis added)). Allegations of property damage fail under the due process clause of the Fourteenth Amendment due to the existence of the prison grievance process or state-tort remedies. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). We have held that an inadequately heated cell does not present "the extreme type of conditions required to establish an Eighth Amendment violation." United States ex rel. Tyrrell v. Speaker, 471 F.2d 1197, 1202 (3d Cir. 1973).[7] The damage and destruction to his religious literature that he describes does not violate the RLUIPA, because he has not shown that these actions "substantial[ly] burden[ed]" his religious practice, see Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007); moreover, to the extent that he requested money damages for RLUIPA violations, such relief is barred by the recent holding in Sossamon v. Texas, 131 S. Ct. 1651, 1660, 1663 (2011) (concluding that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA"). Washington claims to have been the

---

[7] Washington does not, beyond a cursory level, describe the steps taken to address the problem, nor does he aver that he was without ability to mitigate the cold. See Dixon v. Godinez, 114 F.3d 640, 643 (7th Cir. 1997). The same deficiency affects his claims of rodent infestation in his cell. Cf. Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008).

frequent target of racial epithets, but while "[t]he use of racially derogatory language [is] unprofessional and deplorable, [standing alone it] does not violate the constitution." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (citations omitted). Finally, several of Washington's retaliation claims are conclusory, running afoul of Iqbal, e.g., ¶ 44, or otherwise show action that would not dissuade a person of ordinary firmness from exercising his constitutional rights, Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

All the same, some of Washington's allegations sufficiently state a claim upon which relief could be granted. He alleges, for example, that defendant Hayden sprayed disinfectant into his face and then denied him medical treatment. See Am. Compl. ¶ 26. This could plausibly animate an excessive force claim. He contends that while his attempts to obtain medical treatment were ignored or delayed, white prisoners received prompt treatment. E.g., Am. Compl. ¶ 154. He has therefore sufficiently pleaded that he was treated differently from a similarly situated group. See Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003). Additionally, several of his retaliation allegations seem facially to state a claim under the three-part test in Rauser. See, e.g., Am. Compl. ¶¶ 6 (denial of medical treatment due to letter-writing campaign), 10 (purposeful injury plus threats of future injury), 12–13 (denial of medical treatment), 39 (threats of imminent, present bodily violence during strip-search on arrival to SCI Huntington). Most strikingly, he charges that he was denied medical treatment for non-medical reasons, including racial animus, a situation that can constitute the deliberate indifference required to state an Eighth Amendment claim. See Natale v. Camden Cnty.

10

Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). And, lastly, the District Court did not rule on whether it would exercise supplemental jurisdiction over Washington's state-law claims of negligent and intentional destruction of personal property.

IV.

Because we wish to ensure that all of Washington's claims have been adequately considered, we will remand his equal protection claims, the retaliation claims identified above, his excessive-force claims, his denial of medical treatment claims (associated with SCI Huntingdon and Dr. Klemick), and the state-law claim of destruction of personal property; at the same time, we will affirm the District Court's Rule 60(a) and reconsideration orders, as it clearly did not abuse its discretion.[8] We recognize that Washington's allegations are, at times, marked by a lack of perspective (and occasional illegibility) that renders difficult the process of accurate adjudication. But as we discuss above, Washington has facially stated several viable claims, and it is not for us at the Rule 12(b)(6) stage to inquire further into the factual basis of his charges. For the foregoing reasons, the judgment of the District Court will be affirmed in part and vacated in part, and we will remand for further proceedings.

---

[8] As we discuss in our opinion in Washington's second consolidated appeal, C.A. Nos. 10-4434 & 11-1229, many of the claims he raises here overlap with claims in that action. We leave it to the District Court to determine how best to manage those allegations that do appear in both cases.